The next matter, number 24-1253, Eduardo Telles De Menezes et al. versus Marco Rubio et al. At this time, would counsel to the appellants please introduce themselves on the record. Good morning, Your Honors. I'm Adriana Lafayette. I represent the plaintiffs. I'd like to reserve three minutes for rebuttal. You may. Thank you. The merits question here is whether the age-out protections of the Child Status Protection Act, the CSPA, are lost when the petitioning parent naturalizes during the pendency of the visa process. The district court found review of that question barred by the Doctrine of Consular Nonreviewability, but the government concedes that the visa petitioner here, Mr. Menezes, is entitled to review of that CSPA question, and two courts of appeals have also considered the merits of that CSPA question, both rejecting the government's interpretation. The Ninth Circuit reviewed that in the removal context, but the Second Circuit in Cuthill analyzed the CSPA question here in a case very much like this one, an APA challenge brought by a petitioner and beneficiary after being told by the State Department that the visa petition had been reclassified due to the naturalization of the petitioner, such that the beneficiary would now have to wait many years before even being eligible for a consular interview. Just so I understand, the final agency action is the reclassification decision? Yes, Your Honor. And did the Second Circuit, do we have any cases addressing whether that is a final agency action? Or is that just undisputed in the case? I don't take that to be disputed in the case, Your Honor. So here, although a consular interview happened, and that's different than what happened in Cuthill, the interview here turns out to have been improvidently granted. Just a couple questions on how that works. The reclassification decision is made by whom? It's made by the State Department, Your Honor. What does that mean? That's what I'm trying to figure out. I can't exactly pinpoint who made it, Your Honor. I can say that the consular officer communicated it. But the consular officer did not make it? It's not clear to me whether the consular officer reached out to the NVC and said, who has the final decision-making authority in the State Department for the classification? I don't know that that's completely clear in the record, Your Honor. I think the consular officer would certainly, certainly looked at that question. The reason I'm just pressing on this, I'm just trying to figure out, I understand the argument that consular reviewability talks about the final decision to deny the visa. This is not that, and I fully understand that. I'm just trying to understand whether we are dealing with a consular decision such that there might be some argument for consular non-reviewability applying to it, or whether it's a decision independent of the consular. So I would say that I think who made the decision in this individual case is not necessarily clear from the record, but I don't think that changes anything here because even if this were something that the consular officer was the only person who touched this reclassification, it still wouldn't trigger the doctrine of consular non-reviewability because all that the consular officer is doing is applying the FAM, the Foreign Affairs Manual Rule, which in turn comes from the BIA. Consular who? From the BIA's decision in Madison, Marmalena, so the FAM is required to apply BIA precedent and the consular officer is required to follow the FAM. Does the State Department have any authority to change that classification rule? No, Your Honor, the State Department is applying... So how can you get the relief you're seeking? So what do we get in order against the State Department reclassifying? They have no authority to reclassify. No, Your Honor, this court can review whether... Who is the actor who could take an action that would change the classification? If you're saying that the BIA has set a rule and then the State Department just implements that rule, who's the proper part? In the Second Circuit case, who was sued? Was it the State Department? Yes, Your Honor, the State Department is sued because the State Department is doing the reclassification. And the State Department has changed the rule in the circuits that have reached the decisions, correct? Correct, Your Honor. So it is now actually doing the classification differently so we could enter an order that the State Department would enforce. Exactly, Your Honor. While the legal holding that the court is reviewing is ultimately the interpretation put forward by the BIA, the State Department is the one that, you know, is the... When the BIA makes that holding, pursuant to what authority are they doing that? So the BIA made that precedent decision in a case in which it arose before the BIA and then... Why would the BIA be passing on that rule? And why then is the State Department sometime passing it? I'm just trying to understand who's doing what here in the government of the United States of America. Understood, Your Honor. So the BIA made that rule in a case where it arose, I assume, in the removal context. That's when the BIA had occasion to interpret that provision of the CSPA. And there was an existing rule at the time? So the BIA... They were changing something, the BIA? In other words, was there a... The BIA was interpreting the Child Status Protection Act. And prior to the BIA's interpretation of that, what was the understanding? I think the BIA was upholding the way that the government was applying the CSPA. So... So when you say the State Department changed things, from what to what? And what does that have to do with the BIA's ruling? I'm not sure if I understood Your Honor's question, but the BIA interpreted this provision of the CSPA in the context of a case that came before the BIA. The State Department applies the BIA's decisions through its fields, its foreign affairs manual, the FAM. And the consular officers, in turn, apply the FAM. So prior to the BIA decision, was the State Department doing it differently? I believe the State Department was already doing that because that was the interpretation. The BIA upheld, I believe, the interpretation already in effect in the Executive Branch. And what is the reason why the State Department looks to the BIA under the FAM? Is there some statute that tells them they're supposed to? Yes, it's either a statute or a regulation, but the State Department follows the precedent decisions of the BIA. And so, I guess what I'm saying is, if we made a ruling that the State Department has made an error, because the statute doesn't allow that interpretation, and yet we haven't ordered that the BIA, who issues the interpretation of it, has done anything wrong, what then happens? Is the State Department entitled to then disregard what the BIA does, notwithstanding the statute requiring them to follow the BIA? Correct, Your Honor. This is just like Cuthill. This is a challenge to an action by the State Department that the State Department takes following the legal interpretation of the Executive Branch, which is the one first advanced by the BIA. So, just as the Second Circuit did in Cuthill, this Court can review the correctness of that legal interpretation, and then the State Department would comply with that for cases arising out of this circuit. But the BIA would be literally, I mean, there would be no order to the BIA to do anything. Correct, Your Honor. So it would still have the wrong interpretation on the books, and then just the State Department would be ordered to have the right one? That's how it would work? So, this is a challenge in an individual case, right? The remedy would be, in this case, the reclassification of the visa petition, and then the beneficiary would be permitted at that point to apply for an immigrant visa. But, Counsel, you also indicated in your brief, correct, that the State Department has changed the policy for all the applicants for cases arising in the circuits that have the decisions that you've discussed, right? It wasn't just an individual change in policy. It was a circuit-wide change in policy that the State Department put into place. Correct, to conform with the law of that circuit. And the Ninth Circuit. Can I just go back to something you started with? Did you say that the government has conceded that we can review the decision by the consular officer? Did I mishear you? So, at page 21 of its brief, the government concedes that, of course, in the words of the government, the visa petitioner is entitled to review of the visa petition reclassification, and it cites Cuthill for that. For reasons not explained in the government's brief, the government contends that this case is not the right challenge, that something about the way the parties have brought this case makes it not a challenge to the reclassification, but it very much is, as the complaint makes very clear, this is a challenge to the reclassification, just like the one in Cuthill. And just as the Doctrine of Consular Nonreviewability was not even an issue in Cuthill, it similarly doesn't apply here, because as in Cuthill, first, there's no denial of a visa, and second, there's no consular, individualized consular judgment of the kind that the Doctrine of Consular Nonreviewability shields. And I, just on that last point, when you say of the kind that it shields, is that implicit in that, that even if the consular was the one who made the reclassification decision, that's not of the kind that it shields? Or is the argument that there was no decision by a consular here at all that's subject to review? So it's the former, but also there was no denial. I know there's no denial. There's no denial of a visa. So when you say of the kind, that just is a way of saying denial? No, Your Honor. I guess these are two independent bases why the Doctrine of Consular Nonreviewability does not apply. The first is that the doctrine applies when there's been that final decision on the visa.  That hasn't happened. The second is that even if that had happened, this is not the kind of individualized consular judgment that the doctrine shields. And what's the best authority for that proposition? Because another possibility is this decision wasn't made by the consular. It was just communicated by the consular. Some other actor actually made the reclassification decision so that consular reviewability has nothing to do with it at all, whether denial or of kind. And that might make a difference for the kind of decision we're making. Because a decision about what is the kind of thing that falls within it has implications for other cases. If there's no consular reviewability at all, it has no implication for the doctrine of consular reviewability because we're not doing any review of a consular. Right, Your Honor. And I think the best authority is, you know, for example, the foundational case on the doctrine of consular non-reviewability cited, for example, in the law review article that the government cites as the central case is Knauf v. Shaughnessy. And there the court is clear that when Congress delegates to an executive officer that exercise of judgment in an individual case, it's that exercise of judgment that is shielded from judicial review. So you're saying we have to go back to first principles essentially to rule in your favor and say that the doctrine doesn't stop our review here. We go back to first principles and decide there was no individualized assessment here because the consular officer, putting aside Judge Barron's questions for a moment, was not exercising judgment or discretion at all. He or she was just following a policy that they had no discretion to deviate from. It comes from first principles, Your Honor, but I think what's telling is that there's not a single case in the government's brief that applies the doctrine of consular non-reviewability to a circumstance where the consular officer did everything right. They applied the rule that applies across the executive branch. The consular officers, you know, this is not a claim that the consular officer did something wrong in assessing the facts about the date of birth or the date of naturalization or anything like that, right? If the State Department had a computer system that was automatically inputting those naturalization dates from USPIS, an algorithm would have done what the consular officer did. Can I just ask, when the denial of the visa occurs, under the State Department regs and rules, is that subject to appeal within the department? It's subject to some review, supervisor review. I think you can send an email and ask someone within the State Department to look at it, but it's generally to look at sort of certain legal questions, but generally the judgment of the consular officer... Is treated as the final decision of the department? Yes, generally yes. Once a certain amount of time passes after the decision has been issued, is that how it works? That's what makes it the final decision? So the judgment, and this is under 1104 of the USC, the judgment of the consular officer on that visa application, it's the consular officer's decision to make. Okay, and so with respect to the reclassification decision, is there any mechanism for challenging that within the agency? Not any formal mechanism, Your Honor. Again, although this case went to the consulate, it essentially went to the consulate in error, and had anyone at the State Department realized that the naturalization date was when it was, the interview would not have happened. Right, and normally that would be decided by whom as to whether to send it to the consulate? That would be decided by the National Visa Center. The National Visa Center, which is within the State Department? Yes, Your Honor. And you could then in theory challenge that classification decision itself under the APA on the ground that they were, because they classified this, I can't get an adjudication, I want somebody to adjudicate it, that could be challenged. That's the challenge in Cuthill, you're saying? Exactly. And so consular reviewability had nothing to do with it because it never got to a consular. Exactly, Your Honor. And this is the same, it just happens to have gone to the consulate in error. Okay, but that may be relevant for whether we should even reach the question of is this the kind of decision a consular makes, because if that's how it works, all that's happened is the consular has communicated the decision of the National Visa Center, or was that decision never made by the National Visa Center? You said the record's not clear on that. So I don't believe the State Department knew about the naturalization until the consular interview, and that's what set this case on a path that's different from Cuthill. So did the consular, on this record, is it possible the consular made that decision without the proper person in the State Department having made it, which would first be the National Visa Center? Does the consular have any authority to make a determination about the adjustment, about the classification? I think the consular officer has to be assured that the person is eligible for a visa, and here I think it's certainly the consular officer who would have been the one to notice the issue, whether in the database when the classification is listed, whether the consular officer made the change or had to contact somebody else, how that works inside the State Department, I don't know. But I think the very fact that we're having this discussion makes very clear that this is not the kind of decision that we think about, right? It's not a decision like, did this person lie on a prior application? Is this person coming to the United States to commit crimes? It's not the kind of decision that consular officers make in which the case law has repeatedly, you know, said is the kind of case subject to the doctrine of consular nonreviewability. And we're dealing here again with a judge-made exception to the APA's presumption of review. And so in looking at what is the zone of consular nonreviewability that is exempted from the APA, we have to look at what is the exception that Congress could reasonably have been expecting that they were putting into effect, not outlier cases, but, you know, what is really the zone that is protected by the doctrine of consular nonreviewability, and it's definitely not this. Just to clarify, you said that the government doesn't have a case that it can cite, but you don't have a case on point either, right, saying that the doctrine doesn't apply in these types of circumstances, or have I missed something? So we have, for example, the Fifth Circuit's case in Mulligan, the Ninth Circuit in Allen v. Milas. I think those are quite different, though, when I read them. I don't think they are. So, I mean, the Ninth Circuit, for example, in Allen v. Milas talks about errors of law when there is a claim of an error of law made by a consular officer, then that under the Ninth Circuit's law is subject to the doctrine of consular nonreviewability. I think this court in Adams, you know, did in fact review legal determinations in Adams and Allende, but even then the Ninth Circuit distinguishes at page 1108 the circumstances where, you know, the State Department is not following the INA or not following its regulations. I know I've gone all over my time. Should I address the subject of the Child Status Protection Act? I don't know. I'm fine. Thank you. Okay. Thank you, Adams. Thank you, counsel, at this time. And counsel, appellees, please introduce themselves on the record to begin. Good morning. Good morning. Malcolm McDermott for the United States Government. This court should affirm the district court's decision granting the government's motion to dismiss for two reasons. First, because the doctrine of consular nonreviewability applies without exception in this case. The Supreme Court recently reaffirmed less than a year ago in the Department of State v. Munoz courts generally cannot review a consular officer's decision. The district court correctly found that in this case the doctrine barred judicial review of Carlos's visa application and the consular officer's denial of that application. The second reason this court can affirm. Did the consular deny the visa? Yes, Your Honor. Is there, like, an order saying visa denied? So under the INA, once an application is made at the consulate, the consular officer must either issue or refuse the visa. When the consular officer interviewed Carlos, the consular officer has to refuse that. They have to finish the visa application. And the consular officer denied the visa because the consular officer found that Carlos was no longer eligible for the visa sought because he was not seeking a visa in the right visa category. Well, let's just take it your way. Let's say that what you're saying is right. What is going to be and we thought the rule for classification was wrong? In other words, there was a denial. Correct. The sole ground for the denial is that you had been reclassified so you shouldn't be here. That's your view, right? Correct, Your Honor. Okay. Let's say we can't review a denial so that denial, we can't reinstate it and issue the petition. Issue the visa, order it issued. That is correct. And they're not seeking to have it issued. They're seeking to have the classification decision overturned. So what happens in your view as to that piece of the case? So because the consular officer's decision here was that Carlos was no longer in the correct visa category, CNR would apply without exception. That means we can't review the decision to deny the visa. They don't want the visa issued. Does that mean we have to treat as binding on them for all future that the classification decision is correct? So if I'm understanding the question correctly, in this instance, there's no separate reclassification that occurred beyond what the consular officer has decided. You're saying we can't review the decision. We don't look at the merits. Never care whether he's right or wrong about the reclassification decision. The consequence of that is they cannot get the visa, right? Correct. They don't want the visa from him. They're not seeking the visa in this case if I understand it. I think that would be a... They want to have the classification decision overturned. So if we dismiss it, that doesn't do anything to address whether the classification decision is right or wrong. Yet they're making an argument the State Department has the wrong view of classification. What are they supposed to do to challenge that to get that overturned if, in fact, it's wrong? So there are... So the government maintains that the issue can be reviewed if the procedural posture is correct. What's the right posture? What should they do? So in the Second Circuit's decision in Cuthill, in that instance, it's my understanding, that the petitioner had sought reclassification with the National Visa Center. And that's your view, is that the right way to do this, if they want to, is... In other words, if you have it your way, all that happened in this case, in this challenge, was there was a denial of the visa. That's not reviewable. Dismissed. Okay? But tomorrow, today, right when they walk out of this courtroom, they could go to the National Visa Center and say, the classification decision is wrong. The Visa Center would say, no, it's right, because that's what we now do, other than the Second and Ninth Circuit. They then would bring an APA challenge to that, to this court, and then they may win. And then you'd have no problem with it, right? We think that that's the procedural posture that should be used, because contrary non-reviewability is a bar to judicial review in this case. And the only final decision, in your view, before us, is the decision to deny the visa. So that's necessarily the final agency action that's being challenged, and that's subject to constitutional review. Yes, Your Honor. What if we say, they're saying the final agency action was the classification decision. That's what they're challenging. So the fact that there was a denial of the visa is not the agency action that's being challenged. And you're not disputing that there was a final classification decision, right? I'm not disputing that, no. So if we treat them as not challenging the denial of the visa, why do you have a problem with us treating this as a challenge to the classification decision as the final agency action, which we can review in this case, rather than making them have a dismissal of an action they're not challenging, leave the courtroom, say, oh, we really meant to challenge this other thing, have a whole other appeal. What's the point of that? So the point of that is that the procedural posture here really does matter when it implicates the doctrine of cost or non-reviewability. And I understand the concern. And what is not alleged in the complaint is... In their complaint, what did they plead as the final agency action? So what is alleged in the complaint, what is not alleged in the complaint I think is important. What is not alleged in the complaint is that they ever sought visa reclassification at the National Visa Center. That is not in the complaint. And do they have an obligation to do that? Well, if they've been told that the classification has occurred? So that was the consular officer's decision, the consular officer's application of the Foreign Affairs Manual when Carlos had applied. But that's different than the denial of the visa, which they're not challenging. They're just challenging the classification decision. They're saying a final classification decision was made. Do they have an obligation to go to the National Visa Center under any regulation? Is there an exhaustion problem? So I think in Cuthill, the final agency action that was alleged there was the National Visa Center's visa. And here they're saying it was the State Department's classification decision as communicated by the consular. I couldn't get a clear answer on whether they're saying that's because the consular made it or because the State Department made it and the consular communicated it. Do you have a view as to which is the two? How did the classification in this case occur? So my understanding based upon what we only have is the complaint and how I have read the INA and regulations, when Carlos had gone for his visa interview, the consular officer interviewed him, noticed that the visa category for which he was seeking a visa was not the correct visa category when he had applied for the visa at the visa interview, and the consular officer denied the visa then and there and said you have to apply for this other visa category. So are you basically saying there's no final agency action with respect to the classification decision? One was not made by the National Visa Center. At least one is not alleged to have been made. And the consular officer denied Carlos' application when he did apply at the consular. And you're saying that's not reviewable, the denial? Correct, Your Honor. So they simply can't in this procedural posture challenge the final agency action of the National Visa Center having made the decision? Sorry, could you repeat the question? They simply can't challenge in this case, given the procedural posture it's arising under, the final agency action that they're claiming to challenge, which would be the reclassification decision, because that's made by the National Visa Center and we simply don't have an indication that it was made by that actor? Yes, Your Honor. And so they need to go back and do this, notwithstanding that they've already been denied the visa on this ground. It does seem a little silly, doesn't it? I understand, but the procedural posture here does matter, because when the agency action at issue is the actual consular officer. And so is the State Department taking a position neither way as to whether they were so reclassified? Do you have a view on that? I believe that when the consular officer interviewed Carlos and applied the guidance from the Foreign Affairs Manual, that might have operated as a brief. Do you have a view as to whether they have been classified as they contend they've been classified by the State Department? Yes, Your Honor. At this point in time, in the State Department's database, I'm sure that they have been classified as, that Carlos should have been now seeking a visa in the F-1 category. Wouldn't they have had to have been classified that way? Because otherwise, my understanding of the record was that the visa would have been immediately available to him, right? So if they hadn't been reclassified, he would have received the visa, or he would have been able to get it at that time. Am I misunderstanding the record? So the record is very vague, and I'm working with what we have. But my understanding is if no visa reclassification was ever sought at the National Visa Center, the original petition here was for the F-2A category. If that was then sent to the consulate, the beneficiary could apply in the F-2A category at the consulate if the naturalization had never been, that information had not been provided to the State Department. Right, and I may be saying using the word record was incorrect. I apologize. But my understanding of the briefs was that at the time, visas were available immediately in that F-2A category, correct? That's correct, Your Honor. So there must have been a reclassification for the visa to not be available suddenly, for the visa to be refused. And our position would be that that is when the consular officer found that the F-2A category for which Carlos had applied under was not the correct category anymore, the consular officer applying for an affairs manual found that it should be classified in the F-1 category. Right. So can I just go back to their argument that the doctrine just shouldn't, the non-reviewability doctrine shouldn't apply here because it was, going back to first principles, meant for discretionary decisions, judgment, whatever word you want to use, but it's meant to be sort of an individualized determination by a consular officer that is going to be respected for various reasons and shouldn't be reviewed by courts. But their argument is that's just not what happened here and it's the opposite, which is that the officer had no discretion at all because he or she was following the internal policy that said the person has to be, you know, reclassified in this way. So can you just address that argument? Why should it apply here when there was actually not an exercise of any discretion by the consular officer? So first, the Foreign Affairs Manual is guidance the consular officer should be applying. And at times, consular officers have deviated from that. That's been in case law. And in those instances, even when the consular officer fails to follow the proper procedure, courts have found that the doctrine of consular non-reviewability bars judicial review. I would contend that here the challenge to the procedure of the consular officer following the Foreign Affairs Manual would also be brought by the doctrine of consular non-reviewability. Well, I'm just trying to understand that here because at the end of the day, this really boils, and we haven't talked about the statutory construction issues, but this really boils down to a statutory construction issue, right? This is an interpretation of what statutes means, what these statutes mean that the consular officer was implementing. And normally courts get to review agencies' interpretation of statutes, right? So I'm trying to understand why when all the officer is doing is implementing an agency-wide policy about what a statute means, that's the kind of thing that a court can't review. Here in this case, Your Honor, the consular officer's decision is inextricably intertwined with the facts before that officer when Carlos had applied for the visa. Only the fact that his father had just naturalized, right? There is no other fact, is there? Well, so that and his age at the time of naturalization, all the things that a consular officer had to consider to determine if he was properly classified and eligible for the FQA. Is the concern that if we open up this hole or exception to consular review, there's no stopping it? Because in all kinds of cases, there's legal questions. And then we're just in the same bucket the Ninth Circuit's in. Can you review a legal question or a legal error that a consular makes? And if you can do that, then the whole doctrine of consular reviewability unravels. That's the concern, I take it, right? One hundred percent, Your Honor. Yeah, but that concern is not present if we treat the case as not challenging the consular's decision to deny the visa. And we simply treat it as the State Department's final decision to reclassify. So the only impediment I can see to doing that is if there's some reason in this record for us to be uncertain whether we have a final agency decision to reclassify before us. And the complaint is unclear, Your Honor. What is alleged in the complaint is that Carlos had sought, had applied for the visa at the consulate. After the visa interview, the consulate... Gave this reason for denial. Now they're challenging. And so your concern is that has to be a challenge to the denial because that's the only final agency action they're articulating. That's the theory? Yes, correct, Your Honor. Let me ask you. Judge Rickle mentioned statutory construction. I'm looking at your brief at page, I think it's 32 or 33. You could, your client could prevail just on a statutory construction interpretation, correct? Yes, Your Honor. So even if we give the benefit of the doubt to the plaintiff, the jurisdiction, that it can be reviewed and everything under the statute, one section does not cross-reference the other. That's your argument, correct? It can't be incorporated. It's not incorporated into the other. Yes, Your Honor. So it fails as a matter of law just based on the statute. So we would agree with that. It's the end of the case. We don't have to go and, you know, we can assume there's jurisdiction and everything, but we could resolve on that, correct? Correct, Your Honor. And if I might just have a few minutes to address the Child Status Protection Act and the statutory interpretation here, Your Honor raises a good point that the statutory text is clear and unambiguous that age means age, the actual biological age. There's no cross-reference between the two subsections here. Looking at the immediate context of 1151F, age is used three times, and 1, 2, and 3 in age consistently should mean actual biological age. What's the logic for that outcome, the outcome you're seeking? Is there some reason it would make sense to have a world in which that's the rule? So that's the plain and unambiguous statutory.  But it's just nonsensical, but that's just what the text requires. Is that the position? So our position is Congress, in drafting the statutory text, made clear what the intent was. But it turns out you have no reason why that would make any sense to have that be the rule. They just did it. Or is there some policy that serves that makes any sense? So as the Supreme Court noted in Skiawaba, the Child Status Protection Act is not a universal fix for the issue of aging out. They created different reasons or different potential ameliorative effects for aging out. One was in 1151F where it was freezing the age at the time of the petition, and the other was in 1153H where the bureaucratic delay and that reduction was not counted against a beneficiary. And so as the Supreme Court noted in Skiawaba, having these different means to address an issue of aging out for different potential petitioners and different types of beneficiaries. But the consequence of your rule is you age out when? Sorry? The consequence of your rule is that you age out when the parent is naturalized? If the individual is over the age of 21 at the time of naturalization. That's what I'm trying to understand. So one way would be that it's consistent within subparagraph F, and it locks in, it has a hard freeze on what age is. And it would make sense that because these are different types of beneficiaries, petitioners, and different types of visa categories, that Congress would draw a starker line, but not an insurmountable line, between the two regarding any type of conversion. But doesn't the rest of the text indicate that Congress wanted to treat children of citizens, give them more preferential treatment than children of LPRs? And so going back to Judge Barron's question, why does it, we completely understand your argument about the text, but just why would it make sense for somebody to get a worse outcome in terms of aging out simply because their parent became a citizen while their request was pending? I think that's a question for Congress and how Congress wrote the statute, Your Honor. But Congress, you know, I think... Sounds like an unanswerable one. But it did pass these, you know, various provisions together in that act, and I know you're very familiar with the decisions of the Second and Ninth Circuit. I mean, they've provided, I think, you know, very careful reasoning for why, in their view, you have to read all of those provisions together. And since the statutory age provision is about people waiting for F2A visas, and what we're talking about here is a conversion from an F2A visa to somebody who's now the child of a citizen, why shouldn't those be treated the same? I mean, you're talking about the same class of children at the end of the day, and Congress indicated in the companion provisions that it didn't want those children to age out without the time waiting to be subtracted. So why should they be treated differently? They are both F2A visa applicants at the time. So I think part of that is because Congress did not make clear in the statutory text that there's the reduction, the bureaucratic delay formula that is in 1153H must and should be imported into 1151F2. It's not clear from the statutory text there. I mean, I think at the end of the day, right, we're looking at the word age, and it doesn't say biological age in the relevant provision. It just says age. And so then the question is, again, do you look at the surrounding text and what else Congress was doing in the CSPA to say that the overall goal was that for people who are waiting for F2A visas for statutory age to be considered by subtracting the amount of time that the petition was pending? So, you know, the Second and Ninth Circuit have said, let's carry that over and interpret age to mean statutory age. You see no ambiguity whatsoever? That's the government's position. So I understand that there does seem to be that issue, but the fix there would be going back to Congress to change that. I think the other issue potentially with the Cuthill Court's interpretation and the Ninth Circuit's interpretation is that in imposing that statutory age reduction formula into F2, they're reading out the statutory text from H1, in that the requirement that you have to apply, the beneficiary has to seek to acquire LPR status within one year of the visa number becoming available. The Cuthill Court admitted that they were reading that out in imposing that into F2. So just to be clear, you do agree then that we have to look at all of the provisions and not just the use of the word age in the single provision, right? Because you're not referencing other provisions, surrounding provisions. So you do agree we have to look at all of the surrounding provisions in reaching a decision about the meaning of the statutory language. So I would say that, first and foremost, the language is clear and unambiguous, and the Court can give age the normal dictionary definition of age in F2. I think if the Court next wants to consider the surrounding provisions, paragraph F, paragraph 1, 2, and 3 of subpart F make clear that age means biological age. You only get there by reading out something. You only reach a contrary conclusion if you read out something, which you can't do. That reinforces the idea age means what it says. Correct, Your Honor. Thank you. If the Court has no further questions, I'd just like to briefly summarize that the Court. . . We're good. Okay. Thanks. Thank you. Thank you, Counsel. Counsel, at this time, would Counsel for the Appellant please reintroduce herself on the record? She has a three-minute rebuttal. Thank you. Adriana LaFay for the Plaintiffs. I'll just start quickly with the CSPA question, if that's all right. The key language here is the language at 1153 H1. It says, for purposes of subsection A2A, which is the F2A, a determination of whether a noncitizen is still a child, I'm paraphrasing, shall, is the word, be made using, and then it has the formula. So 1153 H1 is extremely clear that this is the formula that applies when we're talking about the age of an F2A beneficiary. And the lack of a cross-reference in 1151 F2 doesn't matter because 1151 F2 is telling us when to make that age determination, and this 1153 H1 has clear language telling us how to make that age determination. And, you know, as the Court was noting, that plain text, of course, aligns with the purposes. Congress provided age-out protection every time a U.S. citizen files a petition for their child, the U.S. provided that complete age-out protection where the child never ages, and provided age-out protection every time an LPR files for their child. It makes absolutely no sense for that protection to evaporate. As far as you know, this would be the only instance that there's no age protection? Correct, Your Honor. In this instance where the parent has gone through hundreds of scenarios, this would be the only. This is the only one I'm aware of, yes, Your Honor. If we were to rule, agree with the Council, we'd be creating a circuit split. Do you agree at this time? Yes, Your Honor. The government— Can you just address the reading out of the language in one that the government is saying, if you followed your view, you'd have to read out that language? You just—I understood that that was the government's position. The Cuthill erred because it couldn't account for some of that language, and I guess it's one. It doesn't—this does not read out any language at all, Your Honor. We're called in F1, F2, and F3 to make an age determination at a moment in time. With regards to F2A beneficiaries, there's a method for doing that that's provided elsewhere in the statute. Okay. Now, on the procedural nightmare that this case is presenting, what do you have to say? Yes, thank you, Your Honor. So the government recognizes this visa petition has been reclassified in the system. The State Department is a defendant in this case. The Secretary of State is a defendant in this case. The government has never made the exhaustion argument that it is advancing here today, and that argument is waived. Moreover, cases like Knauf and this Court's cases in Allende and Adams make clear that questions of statutory construction are subject to judicial review. Even when there is an individual—when there is a realm that is shielded from decision, it is not the question of statutory construction about the decision-making authority. And is that consistent with the Ninth Circuit's view that you cited earlier? I think this Court's precedents are much more favorable to judicial review than even the Ninth Circuit's precedents. That's fine, but are you saying— But even within the Ninth Circuit's precedents. If we took this position, would the position be consistent with the Ninth Circuit's view about consular reviewability? Yes, Your Honor, because we're not alleging any error here by the consular officer. There's not legal error by the consular officer. It's a challenge to how this executive branch is interpreting a statute, which is the heartland of what courts do. Under the government's interpretation— But I don't understand. The ground for denial was the classification. You're saying that classification was error. Yes, Your Honor. So I just am not following. Isn't that the consular making a legal error? He's making the legal error based on something that's out of his control, but that would be true in all of the consular decisions where you claim legal error because if the law demands something else, it's out of the control for the consular to do the opposite. No, Your Honor, there are cases saying that the consular officer made legal error themselves, not by following agency-wide policy. Exactly, and there is simply no case applying— So take an ordinary denial. Let's say they deny the visa, not for reclassification or anything else. The ground they give is inconsistent with the statute determining visa eligibility. Is that reviewable? So if an individual consular officer misapplies the statute, this Court's cases, Adams and Allende, suggest yes, the legal error is— Suggest yes, but our other circuit's decisions suggest no. I would say yes. The Ninth Circuit, for example, would say the individual— So that's fine. We could double down on Adams and extend it or distinguish it, but I'm still trying to get to the point whether this case even really presents that question. I don't think the Court needs to answer that question. So I'm trying to figure out how does it not? Because your opponent says it's unavoidable because the posture it comes up in is in the context of a visa application denial. So that just is the agency action that's being challenged, and it just requires the application of that doctrine, which either applies or has an exception because of this consequence. You seem to be saying forget all that. We're not challenging the denial. We're challenging the classification. All that happened was a communication of it was made to us. So this is just like Cotthill. Correct. Okay. If we do it that way, does the complaint support that notion? And then I guess the idea would be maybe you had a mistake by not going to National Visa Center first, but insofar as that's true, that would be an exhaustion point that's waived. So we could just bypass all of that and decide the case as if this is like a challenge to the National Visa Center determination since no one's contesting that the classification is what the communication said it was. That's the idea? Yes. The Court can certainly do that. And again, even if there is a consular decision here, even if there is a denial, there also would be no precedent for applying the Doctrine of Consular Nonreviewability so broadly as to prohibit review of the legal issue here. Let me just ask one more question. Just to make sure I understand, could you have gone to the National Visa Center here? I'm just a little confused because my understanding, based on what you said before, was that you think the first time the State Department became aware that his father had naturalized was at the interview. So he's at the interview, they realize that, and then he's reclassified. What could you have done at that point? Could you have then gone to the National Visa Center? You could have asked for what's his classification. We just heard from this guy, whoever he is, telling us we were classified this way. Was he? Then they would tell you an answer. Then you'd just be like Cuthill, I assume, right? I suppose one can always go to the National Visa Center and create additional correspondence with the Department of State, but there's no indication. Of course, it would have been futile, and again the exhaustion argument is being raised for the first time. So basically you would have written a letter. That's the further action that you could have taken, just to understand very practically. And then you would have gotten a letter back. And then that letter would be the final agency action that you'd challenge, and it would be just like Cuthill. Yes, Your Honor. Thank you, Your Honor. Thank you. That concludes argument in this case.